TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
POONAM G. KUMAR (Cal. Bar No. 270802)
Assistant United States Attorney
Violent and Organized Crime and Major Frauds Sections
      1300/1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-7964/0719
      Facsimile: (213) 894-6269
      E-mail:    joseph.axelrad@usdoj.gov
                 poonam.kumar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-242-JAK |
|---|---|
|      Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MICHAEL GODFREE |
|          v. | |
| MICHAEL GODFREE, | |
|      Defendant. | |

    1.    This constitutes the plea agreement between Michael Godfree ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.    Defendant agrees to:

        a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count Two of the

1   indictment in <u>United States v. Godfree</u>, CR No. 19-242-JAK, which

2   charges defendant with mail fraud, in violation of 18 U.S.C. § 1341.

3            b.    Not contest facts agreed to in this agreement.

4            c.    Abide by all agreements regarding sentencing contained

5   in this agreement.

6            d.    Appear for all court appearances, surrender as ordered

7   for service of sentence, obey all conditions of any bond, and obey

8   any other ongoing court order in this matter.

9            e.    Not commit any crime; however, offenses that would be

10  excluded for sentencing purposes under United States Sentencing

11  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

12  within the scope of this agreement.

13           f.    Be truthful at all times with the United States

14  Probation and Pretrial Services Office and the Court.

15           g.    Pay the applicable special assessment at or before the

16  time of sentencing unless defendant has demonstrated a lack of

17  ability to pay such assessment.

18           h.    Agree that all court appearances, including his change

19  of plea hearing and sentencing hearing, may proceed by video-

20  teleconference ("VTC") or telephone, if VTC is not reasonably

21  available, so long as such appearances are authorized by Order of the

22  Chief Judge 20-043 or another order, rule, or statute.  Defendant

23  understands that, under the United States Constitution, the United

24  States Code, and the Federal Rules of Criminal Procedure (including

25  Rules 11, 32, and 43), he may have the right to be physically present

26  at these hearings.  Defendant understands that right and, after

27  consulting with counsel, voluntarily agrees to waive it and to

28  proceed remotely.  Defense counsel also joins in this consent,

2

agreement, and waiver.  Specifically, this agreement includes, but is not limited to, the following:

        i.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

        ii.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

        iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

        i.  Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

        j.  Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

1          k.    Authorize the USAO to obtain a credit report upon

2  returning a signed copy of this plea agreement.

3          l.    Agree to and not oppose the imposition of the

4  following conditions of probation or supervised release:

5          Defendant shall not participate in any capacity, either

6          directly or indirectly, in any business that involves the

7          solicitation, acceptance and/or management of funds from,

8          or on behalf of, investors.  Further, the defendant shall

9          provide the Probation Officer with access to any and all

10         business records, client lists, and/or other records

11         pertaining to the operation of any business owned, in whole

12         or in part, by the defendant that are in the defendant's

13         possession, custody or control, as directed by the

14         Probation Officer.

15                     THE USAO'S OBLIGATIONS

16    3.    The USAO agrees to:

17         a.    Not contest facts agreed to in this agreement.

18         b.    Abide by all agreements regarding sentencing contained

19 in this agreement.

20         c.    At the time of sentencing, move to dismiss the

21 remaining counts of the indictment as against defendant.  Defendant

22 agrees, however, that at the time of sentencing the Court may

23 consider any dismissed charges in determining the applicable

24 Sentencing Guidelines range, the propriety and extent of any

25 departure from that range, and the sentence to be imposed.

26         d.    At the time of sentencing, provided that defendant

27 demonstrates an acceptance of responsibility for the offense up to

28 and including the time of sentencing, recommend a two-level reduction

in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 24 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSE</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in Count Two, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, the following must be true: (1) defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud; that is the intent to deceive and cheat; and (4) the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

<u>PENALTIES AND RESTITUTION</u>

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States

Code, Section 1341, is: 20 years of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $8.4 million, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an

absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in or about 2011, and continuing through in or about November 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant, knowingly and with the intent to defraud, participated in and executed a scheme or plan to defraud victim-purchasers of material defendant identified as "ancient slag" and "gold ore," and to obtain money and property from victim-purchasers by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

As part of this scheme, defendant controlled the following entities and bank accounts in those entities' names:  The Materials Acquisition Company LLC ("TMAC"), which maintained an office located in Pasadena, California; Precious Metals of North America, Inc. ("PMONA"); X-Minerals Corporation ("X-Minerals"); and Exyta, LLC ("Exyta").

The scheme operated as follows:  defendant offered and caused to be offered for sale "ancient slag" purportedly owned by, or available to TMAC, which defendant controlled.  In offering materials that defendant sent and caused to be sent to prospective purchasers, "ancient slag" was defined and described as a copper mining waste byproduct containing platinum group metals.  Defendant fraudulently induced the victim-purchasers to buy the "ancient slag" by falsely representing and promising, and causing to be represented and promised, to the victim-purchasers that the "ancient slag" TMAC was selling was valuable because:  (a) it contained precious metals and (b) a process would soon be finalized and available that could extract from the purchased slag the precious metals that the slag purportedly contained.  In fact, as defendant then knew, TMAC did not own all of the slag it sold to victim-purchasers, the slag was not valuable based on precious metals purportedly contained within it, and no process would soon be finalized and available to the victim-purchasers that would enable them to extract precious materials.  To further his scheme, defendant provided and caused to be provided to the victim-purchasers Certificates of Title certified by an attorney that purported to transfer good and marketable title from TMAC to the victim-purchasers for the slag that the victim-purchasers had purchased.  In fact, as defendant then knew, the Certificates of Title were false and fraudulent because TMAC did not own and could not transfer good and marketable title to the vast majority of the slag that it sold, and the certificates had not been certified by an attorney.  In an effort to lull victim-purchasers, defendant falsely claimed that X-Minerals would handle the management, administration, and oversight of processing of the slag.  After TMAC's administrative

dissolution in or around July 2015, defendant used PMONA to solicit funds from victim-purchasers based on the same false representations.

As a result of these false representations, pretenses, and promises, victim-purchasers sent defendant and TMAC money by mailing checks to the TMAC Offices in Pasadena, California, and wiring money to accounts controlled by defendant.  As part of the scheme, defendant transferred and caused the transfer of funds from victim-purchasers to other bank accounts, including a bank account in the name of Exyta.  Defendant then used the funds in Exyta to pay for his personal expenses.  In execution of this scheme to defraud, defendant caused a check from victim-purchaser R.B. in the amount of $6,500 made payable to TMAC to be sent via commercial carrier to the TMAC office in Pasadena, California on or about May 7, 2014.  As a result of defendant's scheme to defraud, defendant caused losses of approximately $8,336,965 to over 100 victim-purchasers.[1]

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the

---

[1] While the parties agree that the actual and intended loss tied to the count of conviction is $6,500, the parties agree that for sentencing guidelines purposes, the total loss based on relevant conduct and uncharged counts is between $3.5 million and $9.5 million.

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| Specific Offense Characteristics | | |
| Loss of More than $3.5 Million and Less than $9.5 Million | +18 | [U.S.S.G. § 2B1.1(b)(1)(J)] |
| More than 10 Victims | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant

11

understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

1

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

2      17.   Defendant agrees that, provided the Court imposes a total
3   term of imprisonment on all counts of conviction of no more than 63
4   months, defendant gives up the right to appeal all of the following:
5   (a) the procedures and calculations used to determine and impose any
6   portion of the sentence; (b) the term of imprisonment imposed by the
7   Court; (c) the fine imposed by the Court, provided it is within the
8   statutory maximum; (d) to the extent permitted by law, the
9   constitutionality or legality of defendant's sentence, provided it is
10  within the statutory maximum; (e) the amount and terms of any
11  restitution order, provided it requires payment of no more than $8.4
12  million; (f) the term of probation or supervised release imposed by
13  the Court, provided it is within the statutory maximum; and (g) any
14  of the following conditions of probation or supervised release
15  imposed by the Court: the conditions set forth in Second Amended
16  General Order 20-04 of this Court; the drug testing conditions
17  mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and (h) any
18  conditions of probation or supervised release agreed to by defendant
19  in paragraph 2 above.

20      18.   The USAO agrees that, provided (a) all portions of the
21  sentence are at or below the statutory maximum specified above and
22  (b) the Court imposes a term of imprisonment of no less than 51
23  months, the USAO gives up its right to appeal any portion of the
24  sentence, with the exception that the USAO reserves the right to
25  appeal the following: (a) the amount of restitution ordered if that
26  amount is less than $8.4 million.

27

28

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2    19.  Defendant agrees that if, after entering a guilty plea

3    pursuant to this agreement, defendant seeks to withdraw and succeeds

4    in withdrawing defendant's guilty plea on any basis other than a

5    claim and finding that entry into this plea agreement was

6    involuntary, then (a) the USAO will be relieved of all of its

7    obligations under this agreement; and (b) should the USAO choose to

8    pursue any charge that was either dismissed or not filed as a result

9    of this agreement, then (i) any applicable statute of limitations

10   will be tolled between the date of defendant's signing of this

11   agreement and the filing commencing any such action; and

12   (ii) defendant waives and gives up all defenses based on the statute

13   of limitations, any claim of pre-indictment delay, or any speedy

14   trial claim with respect to any such action, except to the extent

15   that such defenses existed as of the date of defendant's signing this

16   agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

18   20.  Defendant agrees that if the count of conviction is

19   vacated, reversed, or set aside, both the USAO and defendant will be

20   released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

22   21.  This agreement is effective upon signature and execution of

23   all required certifications by defendant, defendant's counsel, and an

24   Assistant United States Attorney.

## BREACH OF AGREEMENT

26   22.  Defendant agrees that if defendant, at any time after the

27   effective date of this agreement, knowingly violates or fails to

28   perform any of defendant's obligations under this agreement ("a

14

breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

24.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

16

26.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

17

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney


_____          11/8/2021
JOSEPH D. AXELRAD                         _____
POONAM G. KUMAR                           Date
Assistant United States Attorneys

_____          November 8, 2021.
MICHAEL GODFREE                           _____
Defendant                                 Date

_____          11/8/2021
KIM SAVO                                  _____
Attorney for Defendant Michael            Date
Godfree


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be

18

filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_Michael Godfree_                         _November 8, 2021_
MICHAEL GODFREE                           Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Michael Godfree's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set

forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     11/8/2021
KIM SAVO                              _____
Attorney for Defendant Michael       Date
Godfree